UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

JOHN DOE,

                Plaintiff,

    - against -

POLY PREP COUNTRY DAY SCHOOL,

                Defendant.

------------------------------------------------------------ X

Civil Action No. 20-cv-04718-DG-PK

# DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, IN THE ALTERNATIVE, ITS MOTION TO STRIKE

Date of service:  September 20, 2021

**SEYFARTH SHAW LLP**

   Karen Y. Bitar
   Gershon Akerman
   Matthew Catalano
   Vladislava Feldman
620 Eighth Avenue, 32nd Floor
New York, NY 10018
(212) 218-5500
kbitar@seyfarth.com
gakerman@seyfarth.com
mcatalano@seyfarth.com
vfeldman@seyfarth.com

*Attorneys for Defendant*
*Poly Prep Country Day School*

**TABLE OF CONTENTS**

                                          **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.  THE AMENDED COMPLAINT FAILS SUFFICIENTLY TO PLEAD
   CONSTRUCTIVE NOTICE, LET ALONE ACTUAL NOTICE. ...................................... 1

    A.  Plaintiff's Allegations of Constructive Notice Fail to Pass Minimum
       Scrutiny. ............................................................................................................... 2

    B.  Plaintiff's "General Culture" Argument Fails As a Matter of Law. ....................... 4

II.  PLAINTIFF'S REMAINING ARGUMENTS LACK MERIT. ......................................... 4

III.  IN THE ALTERNATIVE, THE COURT SHOULD STRIKE PLAINTIFF'S
   PREJUDICIAL AND IRRELEVANT ALLEGATIONS. .................................................. 7

IV.  THE CVA'S REVIVAL PROVISION VIOLATES THE NEW YORK STATE
   CONSTITUTION'S DUE PROCESS CLAUSE. .............................................................. 8

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Demas v. Levitsky*,
    291 A.D.2d 653 (3d Dep't 2002) ............................................................................................. 7

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) ....................................................................................... 7

*Giuffre v. Dershowitz*,
    No. 19 Civ. 3377 (LAP), 2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020) ................................. 10

*Johansmeyer v. New York City Dep't of Educ.*,
    165 A.D.3d 634 (2d Dep't 2018) ............................................................................................ 3

*Logan v. City of New York*,
    148 A.D.2d 167 (1st Dep't 1989) ........................................................................................... 3

*Murray III v. Nazareth Regional High School*,
    20-cv-1471 (RJD) (RML) (EDNY August 25, 2021) ............................................................ 4

*Murray v. Rsch. Found. of State Univ. of New York*,
    707 N.Y.S.2d 816 (Sup. Ct. 2000) .......................................................................................... 3

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
    35 N.Y.3d 332, 154 N.E.3d 972 (2020) ................................................................................ 10

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
    30 N.Y.3d 377 (2017) ......................................................................................................... 8, 9

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (2006) ..................................................................................................... 8, 9, 10

**PRELIMINARY STATEMENT**

Defendant, Poly Prep Country Day School ("Poly"), respectfully submit this Reply Memorandum of Law in further support of its motion to dismiss the Amended Complaint in its entirety and with prejudice or, in the alternative, to strike immaterial and prejudicial allegations.

Plaintiff's opposition confirms that Plaintiff has not sufficiently pled, and cannot plead, any of its claims against Poly as a matter of law. Plaintiff seeks to hold Poly liable for Miller's alleged acts of sexual misconduct, where Plaintiff acknowledges that the Complaint does not contain any actual notice by Poly of a propensity by Miller to commit acts of sexual abuse, and where Plaintiff's attempt to now allege constructive notice does not pass minimum scrutiny. Plaintiff has not responded substantively to the glaring deficiencies and inconsistencies in his constructive notice claim, which Poly noted in its motion, despite being given the additional opportunity. Rather, Plaintiff offers nothing other than rank speculation of what, perhaps, on some given day, someone could possibly have seen. The fact that, as Plaintiff acknowledges, no one ever came forward about his claims, or complained of any misconduct by Miller, for over forty years further demonstrates that his allegations are not plausible on their face. Plaintiff's obvious attempt to hide these deficiencies by continuously falling back on his "general culture" argument does not save his claims. If fact, it highlights the lack of notice concerning Miller.[1]

**ARGUMENT**

**I.  THE AMENDED COMPLAINT FAILS SUFFICIENTLY TO PLEAD CONSTRUCTIVE NOTICE, LET ALONE ACTUAL NOTICE.**

As Poly established in its opening brief, under New York law, to plead negligence-based claims against an employer for alleged sexual misconduct by an employee, a complaint must set

---

[1] Plaintiff's opposition is also thirty-five pages in length, well over the twenty-five page limit set forth in Judge Gujarati's Individual Practice Rules. The ten extra pages, however, do not help him.

forth factual allegations of prior notice regarding the alleged abuser; conclusory statements that Poly "knew or should have known" are insufficient. (Def.'s Mem. of Law ("Def.'s Br.") at 6–8.) Poly further established that there is no basis in New York law for Plaintiff's theory that general allegations of a "culture" of wrongdoing, based on alleged abuse by a different employee, are sufficient to sustain his claims. (Def.'s Br. at 11–12).

In opposition, Plaintiff does not claim that Poly had actual notice of a propensity by Miller or of Plaintiff's abuse. Instead, Plaintiff argues that Poly had constructive notice of Plaintiff's abuse (Opp. at 13–17) and that there was "a culture" of sexual abuse at Poly (Opp. at 17-20). Neither argument has merit.

### A. Plaintiff's Allegations of Constructive Notice Fail to Pass Minimum Scrutiny.

In its opening brief, Poly demonstrated that Plaintiff's new allegations in the Amended Complaint still fail sufficiently to plead any constructive notice. (Def.'s Br. at 9–11) Specifically, Poly established that the fact that Plaintiff alleges that a school employee may have abused a student in the presence of other students or that the abuse may have occurred multiple times on the school premises in a school classroom does not constitute constructive notice. (*Id.* at 9–10).

In his opposition, Plaintiff argues that he has sufficiently alleged constructive notice by intertwining that claim together with his claim that there existed a culture of abuse at Poly. (*See* Opp. at 16–17 & n. 4). Plaintiff's argument is that Poly had constructive notice of Miller's abuse of Plaintiff based, in part, on the fact that, according to Plaintiff, there existed a culture of abuse at Poly. However, as demonstrated in Poly's opening brief, and as set forth below, there is simply no authority that supports Plaintiff's culture argument.

Plaintiff also argues that he has sufficiently alleged constructive notice because "the abuse occurred in an open classroom during the school day, on school grounds, visible through windows to the largest academic room in the school, where there was a significant risk of being seen by

2

others at any time, and that the abuse occurred on multiple occasions over the course of several years." (Opp. at 13). Plaintiff's argument fails. As Poly further demonstrated in its opening brief (Def.'s Br. at 10–11) Plaintiff's allegation that a study hall "abutted" Miller's classroom (FAC ¶ 22)[2] does not save his claims, because, among other reasons, his claim of the proximity of the study hall is factually inconsistent, and, more importantly, he fails to allege that any Poly employees, as opposed to unspecified "adults" were ever – let alone typically – present, in the study hall, and he fails to allege what portion of the interior of the classroom was visible – and particularly whether the corner of the room where Plaintiff claims the abuse occurred was visible. These omissions are fatal to Plaintiff's claim of constructive notice. It cannot be overstated that Plaintiff, in his opposition, fails to respond substantively to these glaring omissions.

The cases that Plaintiff relies on to support his constructive notice argument are inapposite and do not compel a different result. In *Johansmeyer v. New York City Dep't of Educ.*, there were questions of fact whether the school took "the appropriate measures to evaluate [its intern's] employment and fitness at the time he was allowed to intern at the school" and that the intern violated school policy. 165 A.D.3d 634, 635–36 (2d Dep't 2018). *Murray v. Rsch. Found. of State Univ. of New York* involved a young child that was not in high school and who was let out of the teacher's supervision. 707 N.Y.S.2d 816 (Sup. Ct. 2000). Finally, *Logan v. City of New York* similarly involved a younger child, and where there was a known "high crime" danger at the school. 148 A.D.2d 167 (1st Dep't 1989). In short, these cases did not involve high-school students, as Plaintiff, and also pertained to claims of negligently supervising the young students by allowing them to leave their teacher's supervision, including in violation of school policy and

---

[2] In the event that the Court does not dismiss the Amended Complaint, Poly will demonstrate during discovery, including based on the floor map depicting Miller's classroom, that what Plaintiff is alleging is demonstrably false.

where there were known dangers from other students. Those are not the facts alleged here. A review of those cases shows that they do not support plaintiff's theory of constructive notice in this case based on the facts alleged in the Amended Complaint.

### B. Plaintiff's "General Culture" Argument Fails As a Matter of Law.

Plaintiff does not cite a single case that supports his "culture" theory, namely that allegations that Poly knew of abuse by another teacher can be sufficient to support a claim alleging abuse by Miller. As established by Poly (Def.'s Br. at 11–12), New York law does not support Plaintiff's theory. The standard is well settled in New York that Plaintiff must plead factual allegations of prior notice of a propensity by the alleged abuser—Miller. *See id.* (citing cases)); *see also Murray III v. Nazareth Regional High School*, 20-cv-1471 (RJD) (RML) (Dkt. #60) at 9–10 (EDNY August 25, 2021) ("generalized allegations about the Church's scandalous history of covering up sexual abuse" are insufficient and that "New York courts . . . have held in employee sexual misconduct cases that an employer is only liable for negligent supervision if the employer is aware of specific prior acts or allegations against the employee.").

Finally, Plaintiff's selective attempt to distinguish some of the cases cited by Poly, arguing that those cases did not involve claims of a culture of abuse (Opp. at 16–17), is unavailing. Plaintiff's "culture" theory suffers from that very infirmity—absolutely no supporting authority. Moreover, Plaintiff's arguments misconstrue decades of New York case law, where New York courts have consistently held that, to state a negligence claim against an employer, there must be factual allegations of prior notice about the particular employee's propensity.

### II. PLAINTIFF'S REMAINING ARGUMENTS LACK MERIT.

As set forth in Poly's opening brief, Plaintiff's multiple tort claims fail for additional and independent reasons, including that no such independent causes of action exist, that Plaintiff fails to plead necessary elements for each claim and that they are impermissibly duplicative. (*See* Def.'s

Br. at pp. 13–19)  Plaintiff's opposition fails adequately to respond to these arguments and confirms that his multiple tort claims cannot survive.

*First*, regarding Plaintiff's claim of "breach of *in loco parentis*," Poly argued, and Plaintiff does not dispute, that a school's duty *in loco parentis* is merely an element of a negligence claim—not an independent cause of action.  (Def.'s Br. at 15)  Plainly, "*in loco parentis*" is not an independent cause of action, and none of the cases cited by Plaintiff in opposition (Opp. at 21–23) support Plaintiff's asserting this claim as an independent count.

*Second*, with regard to Plaintiff's claim for Breach of Fiduciary Duty, Plaintiff argues, in opposition, that the "relationship between a school and the children entrusted to its care fits squarely within the definition of a fiduciary relationship under New York law . . . ." (Opp. at 23.)  Yet, Plaintiff fails to cite to a single case supporting his argument.  Plaintiff also fails to even address the authority cited by Poly holding that, in any event, sexual abuse of a child does "not fall within the protections afforded those in a fiduciary relationship" even if such a relationship existed.  (*See* Def.'s Br. at 16 (citing cases).)

*Third*, as to "inadequate security," the cases cited by Plaintiff regarding premises liability and security measures required of landlords/property owners (Opp. at 25–28) do not concern the duty of a school to prevent sexual abuse by its employees.  Moreover, schools are not absolute insurers of students' safety, and in order to plead a negligence claim against a school for breach of its supervision duty, Plaintiff must plead factual allegations of prior notice, which he fails to do.  Absent such notice allegations, Plaintiff cannot plead any basis for asserting that Poly should have taken other steps to prevent reasonably foreseeable harm.

*Fourth*, concerning "breach of non-delegable duty" claim, Plaintiff contends that Poly had a duty to "maintain the school premises in safe conditions [and . . .] prevent boys from being

5

sexually assaulted" (Opp. at 28), but Plaintiff fails to respond to Poly's arguments that that no independent cause of action exists under New York law for such a claim and that, in any event, Plaintiff alleges that Miller was an employee of Poly—not an independent contractor—thus rendering immaterial any theory of a non-delegable duty. Plaintiff also continues to cite several irrelevant cases without any explanation (*id.*), none of which involve claims against an employer or school for claims of sexual abuse by an employee.

*Fifth*, with respect to Plaintiff's emotional distress claims, Plaintiff simply argues that "Poly's failure to address or undertake any remedial measure whatsoever after learning of the horrific sexual abuse being perpetrated against students easily meets the standard of outrageous conduct." (Opp. at 29) However, Plaintiff ignores the case law cited by Poly in its moving brief and, more significantly, fails to point to any allegations in the Complaint that "clearly allege" "extreme and outrages conduct" by Poly, particularly as Plaintiff also concedes that Poly never had any actual knowledge of Plaintiff's abuse by Miller. (*See* Compl. ¶ 27)[3] Moreover, with respect to intentional infliction of emotional distress, Plaintiff also fails to point to any pleaded facts regarding an intent by Poly to cause Plaintiff emotional distress.

Moreover, all of these claims are impermissibly duplicative. Plaintiff, in opposition, points to Rule 8, which allows generally for pleading causes of action "alternatively or hypothetically." (Opp. at 31) Here, however, Plaintiff's duplicative claims do not offer alternative theories of liability, but rather are based on the same underlying theory of liability—that Poly can somehow be liable for Miller's alleged conduct because of the alleged "culture" of sexual abuse at Poly. Plaintiff also argues that, because Poly seeks dismissal of his first-pled claim, the subsequent

---

[3] Incredulously, Plaintiff continues to rely on *Pinks v. Turnbull* (*see* Opp. at 35), where the employer institution had actual prior notice of that plaintiff's prior incidents of abuse by the same person, but failed to take any action to prevent further acts of abuse.

6

claims cannot be duplicative. (Opp. at 31–32) To the contrary, because the duplicative claims are based on the same theory of liability—Poly's purported failure to prevent abuse by Miller—the duplicative claims would all fail for the same reason.[4]

Finally, Plaintiff's argues that an employer can be vicariously liable for assault and battery committed by an employee, even where the acts consist of sexual abuse. (Opp. at 33–35) That argument fails. It cannot be overstated that plaintiff ignores the controlling authority cited by Poly in its opening brief (*see* Def.'s Br. 12–13). Those cases irrefutably demonstrate that, under New York law, an employer cannot be vicariously liable for intentional sexual abuse committed by an employee as a matter of law. *See also Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) ("No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault.").

### III. IN THE ALTERNATIVE, THE COURT SHOULD STRIKE PLAINTIFF'S PREJUDICIAL AND IRRELEVANT ALLEGATIONS.

Plaintiff's allegations relating to Foglietta—a *different* employee than his alleged abuser—and his alleged conduct against *different* former students, serve no purpose other than to improperly prejudice Defendant and should be stricken. Plaintiff, again, fails directly to respond to this argument, though he indicates in the factual background section of his brief that these allegations are necessary to support Plaintiff's "culture" theory of liability. (*See* Opp. at 3) That,

---

[4] Plaintiff also argues that, even if the Court were to dismiss the duplicative negligence claims, his intentional infliction of emotional distress claim should survive because it "address[es] different types of misconduct" than negligence claims. (Opp. at 32) Either Plaintiff is conceding that intentional infliction of emotional distress requires allegations of extremely outrageous and intentional conduct compared to his negligence claim. If so, Plaintiff's failure to plead any different factual allegations of intentional conduct by Poly is fatal to the claim. Conversely, if Plaintiff is relying on the same factual allegations asserted in support of his other claims (as he indeed is), then his claim of intentional infliction of emotional distress is impermissibly duplicative. *See Demas v. Levitsky*, 291 A.D.2d 653, 660 (3d Dep't 2002) ("[A] cause of action alleging intentional infliction of emotional distress should be dismissed where the conduct complained of falls well within the ambit of other traditional tort liability." (quotations omitted)).

7

however, only highlights the prejudice. As discussed above, Plaintiff does not and cannot allege that Poly had any notice of alleged misconduct by Miller. Instead, he is attempting to use salacious allegations relating to Foglietta as a sword to show that somehow Poly should have known of alleged misconduct by Miller. Plaintiff's attempt to tie his own allegations to well-publicized and scandalous, but entirely unrelated, alleged misconduct by Foglietta is improper and prejudicial. These allegations should be stricken in the event that the Complaint is not dismissed in its entirety.

### IV.  THE CVA'S REVIVAL PROVISION VIOLATES THE NEW YORK STATE CONSTITUTION'S DUE PROCESS CLAUSE.

The New York Court of Appeals has upheld statutes reviving expired claims only where there was a total and practical inability to bring a timely claim. The Court of Appeals already considered the question of whether plaintiffs in child sexual abuse cases could have potentially brought a timely claim, and decisively found that they could. *See Zumpano v. Quinn*, 6 N.Y.3d 666, 675 (2006). The inquiry should end there: the CVA's revival provision is unconstitutional. Plaintiffs' arguments to the contrary do not withstand scrutiny.

*First*, Plaintiff sidesteps the core holding of *Zumpano* which, when read in the context of New York Court of Appeals decisions on claim-revival statutes, shows that the CVA is unconstitutional. Plaintiff cannot dispute that previous Court of Appeals decisions upholding the legislature's exercise of the "extreme" revival power all, uniformly, involved statutes that were written to address and remedy situations that caused a practical and total inability to bring a timely claim. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 399-400 (2017) ("[i]n *Robinson*, it was the plaintiffs' exclusive reliance on a provision of the workers' compensation law that was struck down by the United States Supreme Court . . .; in *Gallewski*, it was the occupation of the plaintiffs' countries of residence during World War II . . . ; in *Hymowitz* and *McCann*, it was latent injuries caused by harmful exposure, which the plaintiffs were not able

8

to attribute to an action or omission of the defendant until the statutory period to bring a claim had already expired.").[5] The *Zumpano* Court shows that the CVA stands apart from the statutes at issue in these other cases, as it involves circumstances in which a plaintiff could have, but did not, bring a claim. *See Zumpano* at 676–77 ("[Zumpano] contends that defendants should be equitably estopped from asserting the statute of limitations since their misconduct caused his insanity. This argument also lacks merit as he fails to establish a continuing disability. . . . [A]s an adult, Zumpano held a full-time job for nine years. He also successfully prosecuted a personal injury action on his own behalf in 1986. **As a matter of law, these facts contradict the assertion that Zumpano suffered from an ongoing mental disability and was unable to protect his rights**.") (emphasis added).[6] *Zumpano*'s passing commentary on some hypothetical legislation, was dicta: no such legislation existed and thus the issue was not before the Court, nor did the *Zumpano* Court address due process rights in connection with such a revival statute (instead pointing to inapposite Connecticut and California statutes, which applied federal law). *See id.* at 677, n. 4.

*Second*, Plaintiff's reliance on a handful of trial-court level decisions finding the CVA to be constitutional is misplaced. (Opp. at 7-8.) There are presently thousands of CVA cases throughout New York State. Some have advanced to a level where a judge has ruled on a motion

---

[5] Plaintiff points to language in *Hymowitz*, a drug latency case, which at most suggested a Court would not want to draw arbitrary lines in reviving claims. *See* Opp. at 11 (quoting *Hymowitz*, 73 N.Y. 2d at 515 ("the Legislature properly determined that it would be more fair for all plaintiffs to uniformly now have one year to bring their actions, rather than for the courts to begin drawing arbitrary lines transecting this area's shades of gray."). When the Court of Appeals went on to review relevant case law in the *World Trade Center* decision, it did not express any confusion as to what *Hymowitz* (and *McCann*, which similarly involved latent symptoms) stood for: "in *Hymowitz* and *McCann*, it was **latent** injuries caused by harmful exposure, which the plaintiffs were **not able to attribute to an action or omission of the defendant until the statutory period to bring a claim had already expired**." 30 N.Y.3d at 399-400 (emphases added).

[6] Defendant is sympathetic to the psychological research alluded to by Plaintiff suggesting that sexual abuse claims are underreported. Opp. at 10. But these precise arguments were considered and rejected by the Court of Appeals in *Zumpano*. *See Zumpano*, 6 N.Y.3d at 76–77.

9

to dismiss, most have not. None of the decisions are in any way binding on this Court's decision. This Court is permitted to disagree with the analysis of these other courts—in fact, it should, as these cases were wrongly decided. In particular, Plaintiff points to the *Giuffre* decision's assertion that despite "historical" language from Justice Cardozo, "that claim revival is an extreme exercise of legislative power nearly a century ago, that does not appear to be the prevailing view of such provisions in the here and now." *Id.* at 8 (quoting *Giuffre v. Dershowitz*, No. 19 Civ. 3377 (LAP), 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020). But as explained in Poly's opening brief, the *Giuffre* Court was in error, as the Court of Appeals' *Regina* decision, issued just one week before *Giuffre*, had quoted and adopted Justice Cardozo's "historical" language. Def. Def.'s Br. at 23; *see Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 371, 154 N.E.3d 972, 992 (2020). Furthermore, *Giuffre* did not engage with *Zumpano* whatsoever, and *Giuffre* was decided on the "liberal" standard for seeking to amend a complaint. *Giuffre* at *2.

*Finally*, Plaintiff takes issue with what should be a common-sense proposition: it is unfair and prejudicial for Defendants to have to face a revived claim with a statute of limitations that had already run. Opp. at 13. It is apparent that defendant institutions now facing CVA claims had made prior decisions as to what records to keep, how to maintain them and other strategic decisions without considering that a sexual abuse claim that would have expired decades ago might arise.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in Poly's opening brief, Poly respectfully requests that the Court dismiss Plaintiff's Amended Complaint, with prejudice, and grant Poly such other and further relief as the Court deems just and proper.

Dated: New York, New York           Respectfully submitted,
       September 20, 2021

                                       By: */s/ Karen Y. Bitar*
                                             Karen Y. Bitar