UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
John Doe,

                       Plaintiff,                **MEMORANDUM & ORDER**
                                               20-CV-04718 (DG) (PK)

        -against-

Poly Prep Country Day School,

                     Defendant.

------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

This case arises out of sexual abuse allegedly perpetrated against Plaintiff John Doe by

his teacher, John Miller, while Plaintiff was a high school student at Defendant Poly Prep

Country Day School ("Poly"). Plaintiff seeks to hold Defendant Poly liable. Plaintiff brings his

claims in nine causes of action: (1) negligent hiring/supervision/retention/direction; (2)

inadequate security; (3) breach of duty *in loco parentis*; (4) breach of fiduciary duty; (5) breach

of non-delegable duty; (6) assault; (7) battery; (8) intentional infliction of emotional distress

("IIED"); and (9) negligent infliction of emotional distress ("NIED"). *See* Amended Complaint

("Am. Compl.") ¶¶ 32-91, ECF No. 20. Plaintiff's claims are brought pursuant to the New York

Child Victims Act ("CVA"), N.Y. C.P.L.R. 214-g. *See* Am. Compl. ¶ 1.

Pending before the Court is Defendant's motion to dismiss Plaintiff's Amended

Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("Rule 12(b)(6)") and the Due Process Clause of the New York State Constitution or, in the

alternative, to strike certain allegedly immaterial and prejudicial allegations from the Amended

Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. *See* Defendant's

Notice of Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, to Strike

("Def.'s Mot."), ECF No. 23; Defendant's Memorandum of Law in Support ("Def.'s Br."), ECF

No. 23-5; Defendant's Reply Memorandum of Law ("Def.'s Reply"), ECF No. 25.  Plaintiff

opposes Defendant's motion.  *See* Plaintiff's Memorandum of Law in Opposition ("Pl.'s Br."),

ECF No. 24.

For the reasons set forth below, Defendant's Motion to Dismiss is granted and the

Amended Complaint is dismissed.

## BACKGROUND

I.      **Factual Background**[1]

A.      **John Miller**

Plaintiff alleges that from approximately 1974 to 1976, Plaintiff was a victim of sexual

abuse by John Miller, a long-time humanities and Latin teacher at Poly and an ordained

Episcopal priest.  *See* Am. Compl. ¶ 10.  Plaintiff alleges that Miller is deceased.  *See* Am.

Compl. ¶ 20.

Plaintiff alleges that in his junior year of high school, he enrolled in a course on "the

Bible as Literature," which was taught by Miller.  *See* Am. Compl. ¶ 20.  Plaintiff alleges that he

recalls that Miller was "eccentric, emotional and stood out among the Poly faculty as a loner."

*See* Am. Compl. ¶ 20.  Plaintiff further alleges that Miller could often be observed in his

---

[1]   In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all 'well-pleaded
factual allegations' in the complaint as true . . . [and] 'construe all reasonable inferences that
can be drawn from the complaint in the light most favorable to the plaintiff.'"  *Lynch v. City
of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679
(2009); then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc)).  Further,
"[i]n considering a motion to dismiss for failure to state a claim, '[a] district court is normally
required to look only to the allegations on the face of the complaint,'" though "[it] may
consider documents that 'are attached to the complaint,' 'incorporated in it by reference,'
'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*,
982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

classroom by students or faculty "peripatetically teaching his courses, often directing his comments towards a teddy bear he named Bubby." *See* Am. Compl. ¶ 20.

Plaintiff alleges that his experience in Miller's class was the first time "a teacher at Poly gave positive feedback to [Plaintiff], reacted positively to comments [Plaintiff] made in class and gave [Plaintiff] good grades on his papers." *See* Am. Compl. ¶ 21. Plaintiff further alleges that, for the first time at Poly, Plaintiff was getting an "A" grade in a class, and that Plaintiff believed based on the positive feedback from Miller that Plaintiff had real talent for the humanities. *See* Am. Compl. ¶ 21. Plaintiff alleges that Miller told Plaintiff that "he viewed him as having great insights and a 'true soul.'" *See* Am. Compl. ¶ 21.[2]

As alleged in the Amended Complaint, during the first trimester of Plaintiff's junior year, Miller asked Plaintiff to stay after class, at a time when school was fully in session. *See* Am. Compl. ¶ 22. Plaintiff alleges that "Miller went up to [Plaintiff] in the corner of the room by a row of desks, and held [Plaintiff] and pressed up against his torso and genitals." *See* Am. Compl. ¶ 22. The Amended Complaint alleges that Miller's classroom "abutted a large study hall" and "had a wall of windows, without shades or blinds, and students and teachers in the study hall had a clear view into Miller's classroom through the windows in the study hall," which was a "high-traffic area, one of the largest and most used spaces in the school, where children and adults came and went throughout the day." *See* Am. Compl. ¶ 22. The Amended

---

[2]   In his opposition brief, Plaintiff includes an assertion that Miller referred to Plaintiff in front of the entire class as a type of "god," referring to Plaintiff's ethnicity. *See* Pl.'s Br. at 4. Plaintiff explains that this asserted fact was not alleged in the Amended Complaint because it was "viewed as perhaps providing clues to [Plaintiff's] identity." *See* Pl.'s Br. at 4 n.2. The Court does not consider this asserted fact, which is not properly before the Court at this stage. The Court notes, however, that this factual assertion, even if considered, would not affect the Court's analysis herein.

Complaint further alleges that, because the study hall windows were approximately 15 to 20 feet away from the windows in Miller's classroom,[3] Plaintiff was "scared and mortified as he knew that Miller's classroom was clearly visible from the study hall and he was terrified that other students and Poly staff, faculty and administrators would see him." *See* Am. Compl. ¶ 22. The Amended Complaint alleges that Plaintiff "was overwhelmed by fear and shame and began to cry." *See* Am. Compl. ¶ 22. Plaintiff alleges that "Miller kissed [Plaintiff] and began licking [his] tears, further intensifying [Plaintiff's] fear that he would be seen and humiliated in front of his peers and adults at Poly." *See* Am. Compl. ¶ 22.

Plaintiff alleges that during his senior year, he enrolled in another humanities course with Miller in Aesthetics/Philosophy. *See* Am. Compl. ¶ 25. Plaintiff further alleges that he was hoping that the sexual contact would end and he continued to believe that he had ability in the humanities and that if he obtained a good grade it would help him given his poor record in other courses. *See* Am. Compl. ¶ 25.

Plaintiff alleges that throughout his junior year and into his senior year, over a period of many months, there were approximately five or six further incidents of unwelcomed contact and groping in Miller's classroom after class was over but while Poly was fully in session. *See* Am. Compl. ¶¶ 23, 25. Plaintiff alleges that he "continued to be terrified that he would be found out by his peers and Poly teachers," and was "conflicted because he greatly appreciated the interest that Miller took in him when no other teacher did so and Miller's insistence that he saw great talent that no one else saw." *See* Am. Compl. ¶ 23.

Plaintiff alleges that he recalls an incident in his junior year when he and Miller were

---

[3]   This allegation arguably is in tension with Plaintiff's allegation that Miller's classroom "abutted [the] large study hall." *See* Am. Compl. ¶ 22. Any such tension, however, is not material to the Court's analysis herein.

sitting together, without any other students or faculty, in the cafeteria during lunch time.  *See* Am. Compl. ¶ 24.  Plaintiff alleges that the cafeteria was crowded with other students and faculty at other tables and throughout the large room.  *See* Am. Compl. ¶ 24.  As alleged, an English teacher, Mr. Nicolosi, "sat down at a table directly across from [Plaintiff] and Miller and rolled his eyes and slightly shook his head, signaling to [Plaintiff] that Mr. Nicolosi recognized that Miller was grooming [Plaintiff] and had taken a special, inappropriate interest in [Plaintiff]."  *See* Am. Compl. ¶ 24.

As alleged in the Amended Complaint, Plaintiff asked Miller for a recommendation for college because Plaintiff needed an additional letter to show that he was continuing to improve his studies and had few other choices than Miller given his academic record.  *See* Am. Compl. ¶ 26.  Plaintiff alleges that Miller agreed to write a letter and invited Plaintiff to the Yale Club for lunch to discuss his college plans.  *See* Am. Compl. ¶ 26.  Plaintiff alleges that he was anxious and conflicted but agreed to go to the lunch as it was a public place and he had never been to a university club.  *See* Am. Compl. ¶ 26.  Plaintiff alleges that, after the lunch, Miller invited Plaintiff to visit Miller's apartment on upper Park Avenue.  *See* Am. Compl. ¶ 26.  Plaintiff alleges that, while at Miller's apartment, Miller "made aggressive advances and tried to have oral sex with [Plaintiff]," stating that "sex between them would be an activity of spirituality and religiosity," and that "St. Thomas was Jesus's lover, and that such love was beautiful and divine, as distinguished from mere carnal love."  *See* Am. Compl. ¶ 27.  Plaintiff alleges that he "declined, made excuses and left the apartment," and that he was "extremely disturbed by the incident."  *See* Am. Compl. ¶ 27.

Plaintiff alleges that he was 15 when the incidents began and 17 at the time of the incident in Miller's apartment.  *See* Am. Compl. ¶ 28.  Plaintiff alleges that "he told no one about

5

the incident, including his wife or even his therapist, for more than 30 years," that it was "his painful, awful, ever-present secret," that "[h]e grappled with shame and confusion," that "he questioned his sexuality," and that "he was haunted by the fact that the first person that ever kissed him was Miller." *See* Am. Compl. ¶ 28.  Plaintiff alleges that, even after finally telling his wife and therapist about the abuse, Plaintiff "has remained angry, anxious, depressed and lacking in motivation and self-esteem," "has had difficulty in sustaining a career," and "has had financial and professional issues throughout his life." *See* Am. Compl. ¶ 30.

> **B.**    **Philip Foglietta and Poly's Culture**

In addition to the allegations pertaining to Miller, the Amended Complaint contains allegations regarding Poly football coach Philip Foglietta – who Plaintiff alleges was a "serial predatory pedophile," *see* Am. Compl. ¶¶ 10-19, 31 – and regarding the "culture of sexual abuse and its toleration" at Poly, *see, e.g.*, Am. Compl. ¶ 18.

As alleged in the Amended Complaint, Plaintiff was a member of the football team coached by Foglietta.  *See* Am. Compl. ¶ 10.  Plaintiff alleges that a close friend and member of the football team, James Moe, reported Foglietta's behavior to the Poly Headmaster, that Moe's parents complained to the Poly Headmaster about Foglietta's behavior, and that the Poly Headmaster "threatened Moe with expulsion as a troublemaker."  *See* Am. Compl. ¶ 11. Plaintiff further alleges that "Foglietta knew he had been reported to [the Poly Headmaster] by Moe," and "knew that [the Poly Headmaster] was ignoring these credible reports as well as the reports of others."  *See* Am. Compl. ¶ 11.  Plaintiff alleges that he "was targeted for aggressive and hostile action by Foglietta for his close friendship with Moe, his knowledge that Moe had reported Foglietta and that the school was covering this up, and for personally witnessing acts of sexual abuse by Foglietta against other students."  *See* Am. Compl. ¶ 11.

6

Plaintiff alleges that, on at least two occasions, Plaintiff "was present at athletic department facilities where Foglietta was engaged in inappropriate touching of a sexual nature with children in his office." *See* Am. Compl. ¶ 12.  Plaintiff alleges that Foglietta "not only was preying on children, but was making little or no effort to hide it in the areas of the athletic department." *See* Am. Compl. ¶ 12.  Plaintiff alleges that Foglietta "gave [Plaintiff] angry, defiant stares while one boy masturbated him through his trouser pocket," *see* Am. Compl. ¶ 12, and that Plaintiff "saw Foglietta taking one boy to the dirt floor gym where he locked the door," *see* Am. Compl. ¶ 14.  Plaintiff also alleges that he "knew that Foglietta . . . showered in the nude with boys as young as 10 years old in the lower school shower room." *See* Am. Compl. ¶ 14.  Plaintiff alleges that Foglietta knew that Plaintiff was disturbed by his actions and that on more than one occasion Foglietta responded with smug, angry glares, which Plaintiff alleges he perceived as Foglietta daring Plaintiff to "do something about it." *See* Am. Compl. ¶ 16. Plaintiff alleges that as time progressed during his time at Poly, Plaintiff avoided interaction with Foglietta as Foglietta manifested contempt and hostility toward Plaintiff. *See* Am. Compl. ¶ 16.

Plaintiff alleges that Plaintiff was having academic difficulties and was trying to help his chances of college admission by seeking to play on a college football team. *See* Am. Compl. ¶ 17.  Plaintiff alleges that he "had been named as All New York City Honorable Mention by the New York Daily News, which he thought certainly qualified him to be considered as a college football player." *See* Am. Compl. ¶ 17.  Plaintiff alleges that "Foglietta flatly refused [Plaintiff's] requests for films of [Plaintiff's] play in Poly's games, and also refused to provide a high school coach's recommendations to college coaches." *See* Am. Compl. ¶ 17.

Plaintiff alleges that he knew that "other coaches and the Assistant Headmaster, the Dean of Students and Director of Athletics were fully aware that Foglietta was sexually preying on

students and were covering up for him." *See* Am. Compl. ¶ 15.  Plaintiff further alleges that

Foglietta's conduct was "known to very many students who talked about it frequently." *See* Am.

Compl. ¶ 14.  Plaintiff alleges that he "was enraged and frightened by the culture of sexual abuse

and its toleration." *See* Am. Compl. ¶ 18.

## II.   Procedural History

On November 19, 2019, Plaintiff commenced this action in the Supreme Court of the

State of New York, County of Kings.  *See* ECF No. 1-1.  On October 2, 2020, Defendant

removed this action to the United States District Court for the Eastern District of New York on

the basis of diversity of citizenship.  *See* ECF No. 1.

On October 27, 2020, the Court certified that Defendant intended to challenge the

constitutionality of the CVA under the New York State Constitution and directed Defendant to

comply with Federal Rule of Civil Procedure 5.1 ("Rule 5.1").  *See* ECF No. 8.  On October 30,

2020, Defendant complied with Rule 5.1.  *See* ECF No. 9.

On December 11, 2020, this action was reassigned to the undersigned.

On February 12, 2021, Defendant filed its first motion to dismiss or, in the alternative, to

strike.  *See* ECF No. 12.  Plaintiff filed his opposition to that motion on March 5, 2021, *see* ECF

No. 13, and Defendant filed its reply on March 12, 2021, *see* ECF No. 14.  On July 9, 2021, the

Court ordered the parties to "file supplemental letter briefs on the issue of constructive notice,

specifically with respect to the allegations in Paragraphs 22-24 of the Complaint."  *See* Order

dated July 9, 2021.  The parties subsequently filed their supplemental briefs.  *See* ECF Nos. 15,

16.

On August 3, 2021, oral argument was held on Defendant's first motion to dismiss or

strike.  *See* ECF No. 18.  At the August 3, 2021 oral argument, the issue of constructive notice

was addressed. *See generally* Transcript of August 3, 2021 Oral Argument, ECF No. 30.

Following oral argument, Plaintiff moved – unopposed – for leave to file an amended complaint,

*see* ECF No. 19, which motion was granted, *see* Order of Magistrate Judge Peggy Kuo dated

Aug. 6, 2021.  Plaintiff filed the Amended Complaint on August 7, 2021.  *See* Am. Compl.  On

August 9, 2021, in light of the filing of the Amended Complaint, Defendant's first motion to

dismiss or strike was denied as moot.  *See* Order dated Aug. 9, 2021.

On September 20, 2021, Defendant filed the instant Motion to Dismiss Plaintiff's

Amended Complaint or, in the Alternative, to Strike, which Plaintiff opposed.  *See* Def.'s Mot.;

Def.'s Br.; Def.'s Reply; Pl.'s Br.

On July 20, 2022, oral argument was held on the instant motion.  *See* ECF No. 29.  At the

July 20, 2022 oral argument, the issue of constructive notice was again addressed.  *See generally*

Transcript of July 20, 2022 Oral Argument ("July 20, 2022 Tr."), ECF No. 31.

## DISCUSSION

### I.    Standard of Review

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir.

2011) (quoting *Iqbal*, 556 U.S. at 678).  The court must "accept all 'well-pleaded factual

allegations' in the complaint as true . . . [and] 'construe all reasonable inferences that can be

drawn from the complaint in the light most favorable to the plaintiff.'" *Lynch*, 952 F.3d at 74-75

(first quoting *Iqbal*, 556 U.S. at 679; then quoting *Arar*, 585 F.3d at 567).  However, "labels and

conclusions" or "formulaic recitation of the elements of a cause of action will not do," and dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement of relief." *Twombly*, 550 U.S. at 555, 558.

## II.   The Amended Complaint is Dismissed in its Entirety

For the reasons set forth below, the Amended Complaint fails to state any claim upon which relief may be granted and therefore must be dismissed.[4]

### A.   Plaintiff's Assault and Battery Claims are Dismissed

The Sixth and Seventh Causes of Action, respectively, seek to hold Defendant vicariously liable for Miller's alleged assault and battery of Plaintiff. *See* Am. Compl. ¶¶ 72-82; *see also* Pl.'s Br. at 33-35.

Under New York law, "the doctrine of respondeat superior renders an employer vicariously liable for torts committed by an employee acting within the scope of the employment." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 n.7 (2d Cir. 2015) (alteration accepted) (quoting *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158, 164 (2004)). "To state [a] claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within

---

[4]   In addition to arguing that the Amended Complaint fails to state any claim upon which relief may be granted, Defendant argues that the Amended Complaint should be dismissed because the CVA's revival provision is unconstitutional under the New York Constitution's Due Process Clause. *See* Def.'s Br. at 20-24; Def.'s Reply at 8-10. For the reasons set forth in this Court's decision in *PC-41 Doe v. Poly Prep Country Day School*, No. 20-CV-03628, 2021 WL 4310891, at *3-9 (E.D.N.Y. Sept. 22, 2021), the Court rejects this argument.

Defendant further argues that Plaintiff's Second, Third, Fourth, Fifth, Eighth, and Ninth Causes of Action must be dismissed as impermissibly duplicative of Plaintiff's First Cause of Action. *See, e.g.*, Def.'s Br. at 19-20. Although Defendant's arguments about duplicativeness appear to have some merit, the Court need not reach the issue of duplicativeness here, where the Court finds that each of the claims in the Amended Complaint fails for the independent reason that Plaintiff does not plausibly state a claim upon which relief may be granted.

the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *C.M. v. Est. of Archibald*, No. 20-CV-00751, 2022 WL 1030123, at *4 (S.D.N.Y. Apr. 6, 2022) (quotation marks omitted). An "employer will not be responsible for the torts of an employee who is not acting in furtherance of his employer's business or who acts only on personal motives." *A.W. by E.W. v. N.Y. Dep't of Educ.*, 519 F. Supp. 3d 128, 139 (E.D.N.Y. 2021) (collecting cases).

Although determining whether an employee was acting within the scope of his employment generally "requires a fact-intensive inquiry," the determination "can be made as a matter of law in some instances," and, "[i]n many New York cases, courts have held as a matter of law that an employer was not responsible for a sexual assault committed by an employee because the attack was outside the scope of the employee's duties." *See Girden v. Sandals Int'l*, 262 F.3d 195, 205-06 (2d Cir. 2001) (collecting cases); *see also PC-41 Doe*, 2021 WL 4310891, at *10 n.14 (noting that New York courts regularly conclude, as a matter of law, that employers are not vicariously liable for sexual assaults by their employees, and collecting cases). Indeed, New York courts consistently hold that employers are not vicariously liable for sexual assaults by their employees because such behavior "arise[s] from personal motives and do[es] not further an employer's business, even when committed within the employment context." *See Swarna v. Al-Awadi*, 622 F.3d 123, 144-45 (2d Cir. 2010) (quotation marks omitted) (collecting cases).

Plaintiff argues that Defendant may be held vicariously liable for Miller's alleged assault and battery because Plaintiff has plausibly alleged that Miller, in sexually abusing Plaintiff, acted within the scope of his employment. *See* Pl.'s Br. at 34-35. To this end, Plaintiff points to the allegations in the Amended Complaint that each of the assaults, except for one, occurred in Miller's classroom directly after class and that the assault that did not occur in the classroom

occurred when Plaintiff was at Miller's apartment seeking and obtaining a letter of

recommendation.  *See* Pl.'s Br. at 34.  Plaintiff further argues that "Miller used his position as a

teacher, his praise, his giving of high grades, his agreement to write a letter of recommendation,

his suggestion that his activities were biblically sanctioned (when he taught [Plaintiff] the Bible),

and beautiful (when he taught Aesthetics), to interweave his professional activities with sexual

assault."  *See* Pl.'s Br. at 34.

       Plaintiff's contention that Miller was acting within the scope of his employment when he

allegedly sexually assaulted Plaintiff is without merit.  Indeed, courts have regularly concluded

under New York law that employers are not vicariously liable for sexual assaults committed by

teachers, on the basis that such assaults are outside the scope of the teacher's employment.  *See*

*Doe v. Solebury Sch.*, No. 21-CV-06792, 2022 WL 1488173, at *1-2, *4 (S.D.N.Y May 11,

2022) (dismissing vicarious liability claims against defendant school where teacher sexually

assaulted plaintiff repeatedly on and off campus, because plaintiff failed to "plausibly allege that

[the teacher's] assaults furthered [the school's] business in any way"); *Dia CC v. Ithaca City*

*Sch. Dist.*, 304 A.D.2d 955, 955-56 (3d Dep't 2003) (dismissing vicarious liability claims against

defendant school district where teacher sexually molested student on campus; noting that "[a]n

act of sexual assault by an employee is a clear departure from the scope of employment,

committed solely for personal reasons, and unrelated to the furtherance of the employer's

business;" and collecting cases); *Mary KK v. Jack LL*, 203 A.D.2d 840, 841 (3d Dep't 1994)

("Although these acts [of molestation by a teacher] occurred on school property during school

hours, they were clearly outside the scope of the teacher's employment as they were wholly

personal in nature and certainly not done in the furtherance of the [school district's] business.");

*see also Flores v. Saulpaugh*, 115 F. Supp. 2d 319, 325 (N.D.N.Y. 2000) (noting that alleged

sexual harassment was "undertaken for purely personal motives and not in furtherance of [the school district's] business" and noting that "it strains credulity that sexual harassment of a student can be considered a 'natural incident' of a teacher's employment"). Plaintiff has failed to adequately plead assault and battery claims against Defendant under a theory of vicarious liability.[5]

Accordingly, Plaintiff's assault and battery claims are dismissed.

### B.   Plaintiff's Negligent Hiring, Supervision, Retention, and Direction Claim is Dismissed

The First Cause of Action seeks to hold Defendant liable for negligently hiring, supervising, retaining, and directing Miller. *See* Am. Compl. ¶¶ 32-41. Such a claim "typically arises only when an employee acts outside of the scope of his employment and vicarious liability cannot obtain." *Marotta v. Palm Mgmt. Corp.*, No. 05-CV-10688, 2009 WL 497568, at *4 (S.D.N.Y. Feb. 25, 2009). "[I]n addition to the standard elements of negligence," a plaintiff bringing such claim must show: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v.*

---

[5] Plaintiff's contention that sexual abuse was a "feature, not a bug, of the system at Poly," *see* Pl.'s Br. at 34, does not save his assault and battery claims. Although Plaintiff alleges that "adults in positions of power at Poly" were "aware of, tolerated and covered up rampant and foreseeable sexual abuse at the school," *see, e.g.*, Am. Compl. ¶ 3, the references in the Amended Complaint to Defendant's culture do not amount to plausible allegations that Miller's alleged assaults "furthered [Defendant's] business interests" or constituted an "actual responsibility" Miller had to Defendant; nor do they create a reasonable inference that "[Defendant's] business included sex crimes." *See Doe v. Alsaud*, 12 F. Supp. 3d 674, 678 (S.D.N.Y. 2014); *see also Solebury Sch.*, 2022 WL 1488173, at *4 ("Although plaintiff alleges that [defendant] was aware of – and in some cases tolerated or covered up – [the teacher's] sexual abuse, the [c]omplaint . . . does not, and could not, plausibly allege that [the teacher's] assaults furthered the [s]chool's business in any way.").

*Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations omitted) (quoting *Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 229 A.D.2d 159, 161 (2d Dep't 1997)).[6]

Here, Plaintiff has failed to plausibly allege that Defendant knew or should have known of Miller's propensity for the alleged sexual abuse.

As an initial matter, the Amended Complaint is devoid of any allegation that Defendant actually knew that the alleged assaults were occurring.  Further, the Amended Complaint does not contain any allegation that Defendant was aware of specific acts or allegations of sexual abuse by Miller prior to the alleged abuse of Plaintiff.  The Amended Complaint does not even allege that Miller had in fact ever engaged in – or even been accused of – sexual abuse before the alleged abuse of Plaintiff.[7]  *See Alsaud*, 12 F. Supp. 3d at 682 (noting that, "if [the employee] had not committed any sexual assault before, then, as a matter of law, [the employer] could not have known that he had a propensity for such misconduct"); *Doe v. City of N.Y.*, No. 09-CV-09895, 2013 WL 796014, at *5 (S.D.N.Y. Mar. 4, 2013) (dismissing negligent hiring, retention, and/or supervision claim based on sexual assault allegations because, although defendant received complaint of employee's prior verbal and physical abuse, the complaint did not allege rape or sexual assault, or that the victim's sex was relevant to the alleged misconduct), *aff'd*, 558 F. App'x 75 (2d Cir. 2014); *Murray v. Nazareth Reg'l High Sch.*, 579 F. Supp. 3d 383, 390 (E.D.N.Y. 2021) (dismissing negligent supervision and retention claim where, although Plaintiff alleged prior abuse by same abuser, Plaintiff did not allege that employer was aware of the prior

---

[6]  "Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Cummings v. City of N.Y.*, No. 21-1380, 2022 WL 2166585, at *3 (2d Cir. June 16, 2022) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)).

[7]  The Amended Complaint does not allege that Miller had ever engaged in or been accused of *any* type of improper conduct before the alleged abuse of Plaintiff.  *See generally* Am. Compl.

abuse, and noting that "New York courts . . . have held in employee sexual misconduct cases that an employer is only liable for negligent supervision if the employer is aware of *specific* prior acts or allegations against the employee") (emphasis in original); *C.M. v. City of N.Y.*, 9 Misc. 3d 251, 254 (N.Y. Sup. Ct., N.Y. Cnty. 2005) ("[A] negligent retention theory is not viable in a sexual abuse case, unless the school had notice of prior allegations of a teacher's inappropriate contact with a student and failed to investigate the allegations."); *see also Doe v. City of N.Y.*, No. 15-CV-00117, 2018 WL 6095847, at *7 (S.D.N.Y. Nov. 21, 2018) (denying defendants' motion for summary judgment on negligent hiring and supervision claims where evidence existed of, *inter alia*, a prior sexual assault allegation against the employee).

Moreover, none of the allegations in the Amended Complaint amounts to a plausible allegation that Defendant had constructive notice of the alleged assaults or of Miller's propensity to commit sexual abuse.  First, the allegations regarding the possibility of seeing into Miller's classroom from the study hall do not amount to Defendant having constructive notice of the alleged assaults.  Importantly, the Amended Complaint does not allege that *anyone* – including students, Poly staff, Poly faculty, or Poly administrators – witnessed the alleged abuse.  Any suggestion that the mere proximity of others to the alleged abuse creates constructive notice – *see* Pl.'s Br. at 16 – is not supported by caselaw and is unpersuasive.[8]

Furthermore, Plaintiff's allegation that Miller "peripatetically" taught his students while speaking to a teddy bear, *see* Am. Compl. ¶ 20, does not plausibly suggest that Miller had a propensity to commit sexual abuse.  Similarly, any allegation that Miller was eccentric and stood

---

[8]  In addition, Plaintiff's reliance on *Johansmeyer v. New York City Department of Education*, 165 A.D.3d 634 (2d Dep't 2018), *see* Pl.'s Br. at 14, is misplaced.  That case does not stand for the proposition that a school has constructive notice of a teacher's propensity to commit sexual assault based on the fact, without more, that the teacher spent time alone with a student.

out among Poly faculty as a loner, *see* Am. Compl. ¶ 20, does not plausibly suggest that Miller had a propensity to sexually assault students.  Moreover, Plaintiff's allegations that Miller gave good grades to Plaintiff and responded positively to Plaintiff in class, despite Plaintiff's poor performance in other classes, *see* Am. Compl. ¶¶ 19, 21, do not plausibly speak to Miller's alleged propensity.  And, the allegation that an English teacher sat down at a table across from Miller and Plaintiff and rolled his eyes and slightly shook his head, which signaled to Plaintiff that the English teacher recognized that Miller was grooming Plaintiff and had taken an inappropriate interest in Plaintiff, *see* Am. Compl. ¶ 24, likewise fails to plausibly indicate Miller's alleged propensity.[9]  Notably, Plaintiff fails to point to any analogous case(s) supporting the conclusion that allegations of this nature – individually or collectively – plausibly amount to an indication of propensity to commit sexual abuse.  *See generally* Pl.'s Br.

The allegations regarding Foglietta's abuse and Defendant's culture in tolerating such abuse also fail to sufficiently allege that Defendant knew or should have known of Miller's propensity for sexual abuse.  Indeed, courts have concluded that allegations of this nature are insufficient.  *See, e.g.*, *Murray*, 579 F. Supp. 3d at 390 (dismissing negligent supervision of employee claim where plaintiff sought to combine employee's alleged employment history of having previously abused plaintiff "with a broader allegation that the Church has been known to . . . cover-up clergy sexual abuse"); *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 362 (S.D.N.Y. 2021) (dismissing negligent screening, hiring, and supervision claims where plaintiff alleged that defendant "was aware that 'drivers' were sexually assaulting female customers because [defendant] received nearly 6,000 reports of sexual assault during its rides in the United

---

[9]   At oral argument, Plaintiff's counsel "concede[d]" that this allegation "is not a point upon which [the Amended Complaint] rests in terms of notice to the school . . . [it is] one individual data point for consideration."  *See* July 20, 2022 Tr. at 34.

16

States in 2017 and 2018" but failed to allege "any instances of past misconduct by [the driver] or any other facts with respect to him that should have led [defendant] to concern"); *Doe v. City of N.Y.*, No. 18-CV-00670, 2018 WL 3824133, at *7 (E.D.N.Y. Aug. 9, 2018) (dismissing negligent hiring, retention, and supervision claim where plaintiff alleged past "sexual misconduct by other Brooklyn South Narcotics officers," but made no specific factual allegations of prior sexual misconduct by the detectives alleged to have committed the sexual assaults at issue); *see also Alsaud*, 12 F. Supp. 3d at 682 (rejecting plaintiff's argument that "claims for negligent supervision and retention do not require a plaintiff to allege specific prior misconduct by the employee" and explaining that "[s]uch claims require specific allegations of the employee's past wrongdoing to provide a basis from which to infer the employer's knowledge").

Because Plaintiff has failed to adequately allege that Defendant knew or should have known of Miller's propensity for the alleged sexual abuse, Plaintiff's negligent hiring, supervision, retention, and direction claim may not proceed.[10]

Accordingly, Plaintiff's negligent hiring, supervision, retention, and direction claim is dismissed.

## C.   Plaintiff's Breach of Duty *In Loco Parentis* Claim is Dismissed

The Third Cause of Action seeks to hold Defendant liable for breach of duty *in loco parentis*. *See* Am. Compl. ¶¶ 51-55. "Breach of duty of *in loco parentis*" is not, however, an independent cause of action under New York law. *See Zubko-Valva v. Cnty. of Suffolk*, No. 20-

---

[10] The negligent hiring portion of Plaintiff's First Cause of Action fails for the additional reason that the Amended Complaint contains no allegations regarding Miller before or during his hiring process at Poly. *See, e.g.*, *Poppel v. Est. of Archibald*, No. 19-CV-01403, 2020 WL 2749719, at *6 (S.D.N.Y. May 27, 2020) (concluding that plaintiffs did not sufficiently allege cause of action for negligent hiring where plaintiffs failed to allege facts regarding employee's propensity to commit sexual abuse in the period before he was hired and failed to allege knowledge of facts that would lead a reasonably prudent person to investigate).

CV-02663, 2022 WL 2197136, at *7 (E.D.N.Y. June 17, 2022) ("*In loco parentis* defines the duty owed within the context of a negligence cause of action, but does not create an independent cause of action." (alteration accepted) (quoting *O'Reilly v. Archdiocese of N.Y.*, No. 950261/2019, 2021 WL 4706417, at *3 (N.Y. Sup. Ct., N.Y. Cnty. Oct. 8, 2021))).  Plaintiff appears by his Third Cause of Action to seek to impose liability on Defendant for inadequate – *i.e.*, negligent – supervision of Plaintiff.  *See, e.g.*, Pl.'s Br. at 22 ("[Plaintiff] asserts that Poly breached its duty to act *in loco parentis* by failing to provide adequate supervision of its students.").  As noted above, there are three elements of a negligence claim under New York law: duty, breach of that duty, and injury substantially caused by the breach.  *See Cummings*, 2022 WL 2166585, at *3.

Starting with the duty element, it is well settled that "[i]n New York, schools are under a special duty of *in loco parentis*," *Hammond v. Lincoln Tech. Inst., Inc.*, No. 10-CV-01933, 2012 WL 273067, at *6 (E.D.N.Y. Jan. 30, 2012), which obligates them to "exercise such care [of their charges] as a parent of ordinary prudence would observe in comparable circumstances," *Mirand v. City of N.Y.*, 84 N.Y.2d 44, 49 (1994) (quoting *Hoose v. Drumm*, 281 N.Y. 54, 57-58 (1939)).  "Schools are not insurers of safety, however, for they cannot reasonably be expected to continuously supervise and control all movements and activities of students." *Mirand*, 84 N.Y.2d at 49.  Nevertheless, by virtue of "assuming physical custody and control over [their] students" and "effectively tak[ing] the place of parents and guardians," schools "must 'adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision.'"  *Hammond*, 2012 WL 273067, at *6 (quoting *Mirand*, 84 N.Y.2d at 49); *see also, e.g.*, *Meyer v. Magalios*, 170 A.D.3d 1163, 1164 (2d Dep't 2019).

As to the breach element, "[t]he standard to determine whether the school has breached its duty [to adequately supervise students] is to compare the school's supervision and protection to that of 'a parent of ordinary prudence placed in the identical situation and armed with the same information.'" *Dia CC*, 304 A.D.2d at 956 (quoting *Mary KK*, 203 A.D.2d at 841); *see also Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 335 (E.D.N.Y. 2012).  In cases involving harm caused by an individual's intentional acts, although a plaintiff "generally must demonstrate the school's prior knowledge or notice of the individual's propensity or likelihood to engage in such conduct," *Dia CC*, 304 A.D.2d at 956, a school may be held liable absent such knowledge or notice when "the danger and risk of harm could have been reasonably foreseen and prevented by the institution," *see Diamond Jewels v. Lewis*, No. 15-CV-05760, 2019 WL 5896224, at *23 (E.D.N.Y. Nov. 12, 2019) (collecting cases).

Plaintiff has failed to plausibly allege that Defendant inadequately supervised Plaintiff. As noted above, Plaintiff has not plausibly alleged that Defendant had actual or constructive notice of the alleged assaults or of any propensity by Miller for sexual abuse.  Further, Plaintiff has failed to allege facts demonstrating that the danger and risk of harm was foreseeable to Defendant.  Plaintiff's allegations concerning Foglietta's abuse of other students and Defendant's tolerance of that abuse do not demonstrate foreseeability of the danger and risk of harm to Plaintiff posed *by Miller*, or that Defendant was required to prevent Miller from being alone with Plaintiff after class.  Moreover, the Amended Complaint does not allege that Plaintiff's after-class or off-campus meetings with Miller contravened any policy or security measure implemented by Defendant and does not otherwise allege facts demonstrating that Plaintiff, a high school student, meeting with his teacher directly after class rendered the alleged sexual assaults foreseeable – even assuming Defendant knew about the meetings, which is not plausibly

alleged.  *See Mary KK*, 203 A.D.2d at 842 (noting that "[t]he harm posed by the [high school] teacher's proclivities to engage in inappropriate sexual conduct with students was not known or foreseeable at the time these incidents happened" and, thus, "there would have been no reason for a parent of ordinary prudence to prevent his or her child from meeting privately with the teacher during school hours, given the degree of trust reposed in teachers and the fact that such meetings are an integral part of the educational process") (citation omitted).

In the absence of plausible factual allegations demonstrating notice or foreseeability, Plaintiff fails to state an inadequate supervision of students claim.

Accordingly, Plaintiff's claim styled as a breach of duty *in loco parentis* is dismissed.

### D.    Plaintiff's Inadequate Security Claim is Dismissed

The Second Cause of Action seeks to hold Defendant liable for providing "inadequate security" to Plaintiff by failing to safeguard Plaintiff from Miller.  *See* Am. Compl. ¶¶ 42-50. Although styled as a claim for inadequate security, Plaintiff appears to assert a claim for premises liability.  *See* Pl.'s Br. at 25-28.

"Under a theory of premises liability, it is the duty of a property owner 'to protect plaintiff from foreseeable harm caused by third persons,'" including its own employees.  *See PB-36 Doe v. Niagara Falls City Sch. Dist.*, 72 Misc. 3d 1052, 1055-56 (N.Y. Sup. Ct., Niagara Cnty. 2021) (quoting *Taft v. Connell*, 285 A.D.2d 992, 992 (4th Dep't 2001); citing *JG v. Goldfinger*, 161 A.D.3d 640, 640 (1st Dep't 2018)); *see also Murray*, 579 F. Supp. 3d at 388-89 (noting that a landowner's duty to maintain property in a reasonably safe condition may include "taking reasonable measures to control the foreseeable conduct of third parties on the property to prevent them from intentionally harming or creating an unreasonable risk of harm to others" (alteration accepted) (quotation marks omitted)); *C.Q. v. Est. of Rockefeller*, No. 20-CV-02205,

2021 WL 4942802, at *6 (S.D.N.Y. Oct. 21, 2021) ("An owner of realty has a duty to maintain

its property in a safe condition, which includes undertaking minimal precautions to protect the

public from reasonably foreseeable criminal acts of third persons." (alterations accepted)

(quotation marks omitted)).

　As set forth above, the Amended Complaint fails to adequately allege that Miller's

alleged sexual assaults of Plaintiff were foreseeable to Defendant.  *See, e.g.*, *Murray*, 579 F.

Supp. 3d at 388-90.  Absent such allegations, Plaintiff has failed to state a claim for premises

liability.

Accordingly, Plaintiff's claim styled as an inadequate security claim is dismissed.

### E.　Plaintiff's Breach of Fiduciary Duty Claim is Dismissed

The Fourth Cause of Action seeks to hold Defendant liable for breach of fiduciary duty.

*See* Am. Compl. ¶¶ 56-64.  "To state a cause of action to recover damages for breach of fiduciary

duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the

defendant, and (3) damages directly caused by the defendant's misconduct."  *C.Q.*, 2021 WL

4942802, at *5 (quoting *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020)).

Plaintiff alleges, *inter alia*, that "[t]here exists a fiduciary relationship of trust,

confidence, and reliance between Plaintiff and Defendant," and that "this relationship is based on

the entrustment of Plaintiff while he was a minor child to the care and supervision of Defendant

and its employees, including Miller," which "required Defendant to . . . act in the best interests of

Plaintiff and protect Plaintiff due to infancy and vulnerability."  *See* Am. Compl. ¶ 58.  Plaintiff,

however, fails to point to any New York case that holds that there is a fiduciary relationship

between a high school and its students.  *See* Pl.'s Br. at 23-25; *see also Zimmerman*, 888 F. Supp.

2d at 335 n.5 ("Though the plaintiffs denominate their claim as one for breach of fiduciary duty,

New York courts do not describe the duty of a school to its students as such.").  Even assuming, *arguendo*, that such a relationship existed under New York law, Plaintiff's failure to plausibly allege that Defendant knew or should have known of Miller's propensity for the alleged sexual abuse would be fatal to Plaintiff's breach of fiduciary duty claim.  *See, e.g.*, *Doe v. Montefiore Med. Ctr.*, 598 F. App'x 42, 43 (2d Cir. 2015); *Ehrens*, 385 F.3d at 235 n.2.

Accordingly, Plaintiff's breach of fiduciary duty claim is dismissed.

### F.    Plaintiff's Breach of Non-Delegable Duty Claim is Dismissed

The Fifth Cause of Action seeks to hold Defendant liable for "breach of non-delegable duty," *see* Am. Compl. ¶¶ 65-71, and alleges that a "non-delegable duty of trust [existed] between Plaintiff and Defendant," *see* Am. Compl. ¶ 66.  Tellingly, Plaintiff fails to cite any authority for the proposition that breach of a non-delegable duty of trust is an independent cause of action in New York.  In any event, Plaintiff's Fifth Cause of Action – which appears to be a repackaging of various of Plaintiff's other claims – fails to plausibly allege any "breach" by Defendant with respect to Plaintiff.[11]

Plaintiff's breach of non-delegable duty claim is dismissed.

### G.    Plaintiff's IIED Claim is Dismissed

The Eighth Cause of Action asserts an IIED claim against Defendant, alleging that "Defendant acted intentionally and recklessly by tolerating and covering up outrageous conduct, to wit, sexual abuse," and that "Defendant's actions and failure to act directly caused Plaintiff severe emotional distress, which has lasted for over 40 years."  *See* Am. Compl. ¶¶ 83-86.

---

[11]  Notably, in his brief, Plaintiff does not reference a "duty of trust" when discussing his breach of non-delegable duty cause of action; rather, he references a "duty to protect."  *See* Pl.'s Br. at 25.  His argument in this regard overlaps with, *inter alia*, his inadequate security-related argument, which, as set forth above, is unavailing.

Under New York law, to state an IIED claim, "a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021). "To satisfy the first element, plaintiff must allege conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Meeker v. McLaughlin*, No. 17-CV-05673, 2018 WL 3410014, at *11 (S.D.N.Y. July 13, 2018) (quotation marks omitted). Notably, although a defendant need not harbor specific intent to cause emotional distress, *see Rich v. Fox News Network, LLC*, 939 F.3d 112, 124-25 (2d Cir. 2019), "the conduct allegedly causing the emotional distress 'must be intentionally directed at the plaintiff,'" *Ranta v. City of N.Y.*, 481 F. Supp. 3d 115, 118 (E.D.N.Y. 2020) (quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)); *see also Meeker*, 2018 WL 3410014, at *11; *Gluckman v. Am. Airlines, Inc.*, 844 F. Supp. 151, 158 (S.D.N.Y. 1994). "When pleading intentional infliction of emotional distress, the bar is extremely high, and this highly disfavored cause of action is almost never successful." *Bodenmiller v. Cnty. of Suffolk*, No. 20-CV-00414, 2021 WL 4555884, at *12 (E.D.N.Y Aug. 30, 2021) (alteration accepted) (quotation marks omitted).

Here, Plaintiff does not plausibly allege an IIED claim. Although Plaintiff alleges that Defendant tolerated and covered up sexual abuse, *see* Am. Compl. ¶ 84, Plaintiff fails to allege any conduct by Defendant that was "intentionally directed at" Plaintiff. *See Ranta*, 481 F. Supp. 3d at 118 (quoting *Martin*, 762 F.2d at 220). Instead, Plaintiff alleges that he was "traumatized by the culture of knowing tolerance and cover up of sexual abuse at Poly, the hostility of Foglietta and Miller's taking advantage of him after serving as the one person who gave him

encouragement and recognition." *See* Am. Compl. ¶ 31. Such allegations are insufficient. *See, e.g.*, *SB on behalf of AB v. Newark Cent. Sch. Dist.*, No. 21-CV-06138, 2022 WL 541773, at *10 (W.D.N.Y. Feb. 23, 2022) (dismissing IIED claim against certain defendants where plaintiffs did not plausibly allege, *inter alia*, that these defendants "intentionally inflicted emotional distress upon [p]laintiffs").[12]

Accordingly, Plaintiff's IIED claim is dismissed.

### H.    Plaintiff's NIED Claim is Dismissed

The Ninth Cause of Action asserts an NIED claim under a direct duty theory.[13]  To state a claim under such theory, a plaintiff must allege "(1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).  As noted above, however, Plaintiff has failed to plausibly allege that Defendant knew or should have known of Miller's propensity for the alleged abuse – or even that the danger or risk of harm was foreseeable – and therefore Plaintiff's NIED claim fails on the first prong.

Accordingly, Plaintiff's NIED claim is dismissed.

* * *

In sum, the Amended Complaint fails to state any claim upon which relief may be

---

[12]  At oral argument, when asked about intentionality, Plaintiff's counsel argued that Plaintiff "suffered as a result of the condition that is intentionally created by the school."  *See* July 20, 2022 Tr. at 37.

[13]  At oral argument, Plaintiff's counsel confirmed that Plaintiff is proceeding under a direct duty theory.  *See* July 20, 2022 Tr. at 36-37.

granted.  Accordingly, the Amended Complaint must be dismissed in its entirety.[14]

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 23, is granted, and the Amended Complaint, ECF No. 20, is dismissed in its entirety.  Such dismissal is without leave to amend given that Plaintiff does not seek leave to amend; that Plaintiff was apprised of Defendant's view of the pleading defects during the litigation in connection with Defendant's first motion to dismiss; that Plaintiff has been afforded – and availed himself of – the opportunity to replead; and that there is no indication that Plaintiff could provide additional allegations that might cure the defects set forth above and lead to a different result.  *See Gallop v. Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011).

The Clerk of Court is directed to enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Diane Gujarati*_____
DIANE GUJARATI
United States District Judge

Dated:  September 29, 2022
          Brooklyn, New York

---

[14] Because the Court grants Defendant's primary request for relief, the Court need not reach Defendant's alternative request to strike certain allegations from the Amended Complaint.